```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
   TIMOTHY DENDY and JASON POLK,              :
                                              :
                         Plaintiffs,          :
                                              :       14-CV-8381 (JPO)
                 -v-                          :
                                              :       OPINION AND ORDER
   NATIONAL RAILROAD PASSENGER                :
   CORP.,                                     :
                                              :
                         Defendant.           :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

      Plaintiffs Timothy Dendy and Jason Polk allege that Defendant National Railroad Passenger Corporation ("Amtrak") violated the whistleblower provisions of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C § 20109, by demoting Plaintiffs because they reported safety violations. Amtrak moves for summary judgment. For the reasons that follow, the motion is denied.

**I.      Background**

      Dendy and Polk are Amtrak employees. (Dkt. No. 29 ¶ 1; Dkt. No. 30 ¶ 1; Dkt. No. 31 ¶ 3.) In the summer of 2013, they each applied to become "lead car inspectors." (Dkt. No. 31 ¶¶ 5, 37.) A lead car inspector is responsible for inspecting and documenting safety defects in Amtrak trains. (*Id.* ¶¶ 6-8.)

      The parties agree that Amtrak removed Dendy and Polk from their positions, and demoted them to the position of "car inspector," in July 2013. (*Id.* ¶¶ 32, 52; *see also* Dkt. No. 1 at 2, 4; Dkt. No. 29 ¶ 65; Dkt. No. 30 ¶ 63.) Car inspectors have different job duties than lead car inspectors, and according to Plaintiffs, receive lower hourly wages. (Dkt. No. 21-2 at 103; Dkt. No. 29 ¶ 66; Dkt. No. 30 ¶ 64; Dkt. No. 31 ¶¶ 4-6.)

The parties dispute why Dendy and Polk were demoted.  In Plaintiffs' account, Dendy and Polk were model employees who diligently reported legitimate safety violations, including missing fire extinguishers, safety ladders, screws, and emergency decals, as well as broken gun box locks, fire alarms, and trap doors.  (Dkt. No. 21-3 at 127-32; Dkt. No. 21-17 at 91-97; Dkt. No. 31 ¶ 90.)  Plaintiffs aver that they were threatened with demotion unless they agreed to report fewer safety defects.  (Dkt. No. 21-3 at 127-31, 148, 156; Dkt. No. 21-17 at 98-99; Dkt. No. 21-18 at 101-05, 116-17; Dkt. No. 31 ¶¶ 25, 118.)  They argue that, when they declined to "li[e] on inspection records," they were removed from their jobs.  (Dkt. No. 31 ¶ 119; *see also* Dkt. No. 29 ¶¶ 64-68, Dkt. No. 30 ¶¶ 62-65.)

In Amtrak's account of the facts, Dendy and Polk "excessive[ly]" documented "insignificant" and "superficial" defects and other unnecessary information, and, as a result, completed their assignments more slowly than other lead car inspectors.  (Dkt. No. 31 ¶¶ 16-18, 27, 51.)  Amtrak argues that it repeatedly warned Plaintiffs to complete their car inspections on time, and demoted them not because they reported hazardous safety conditions, but because they were unproductive and unfit for their positions.  (Dkt. No. 31 ¶¶ 25-27, 31-32, 45-49.)

**II.    Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In assessing a motion for summary judgment, the court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). "It is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (citation omitted).

**III.   Discussion**

Claims brought under the FRSA whistleblower provisions are subject to the same burden-shifting framework that applies to whistleblower actions under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 20109(d)(2)(A). *Young v. CSX Transp., Inc.*, 42 F. Supp. 3d 388, 393 (N.D.N.Y. 2014) (citing *Araujo v. N.J. Transit Rail Operations, Inc.,* 708 F.3d 152, 157 (3d Cir. 2013)); *see also Hernandez v. Metro-North Commuter R.R.*, 74 F. Supp. 3d 576, 579 (S.D.N.Y. 2015) (citing *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013)). Under this framework, to succeed on her whistleblower claim, an employee must demonstrate by a preponderance of the evidence that (1) she engaged in a protected activity, (2) the employer knew of that activity, (3) she suffered an adverse employment action, and (4) the protected activity was a contributing factor in the decision. *Hernandez*, 76 F. Supp. 3d at 579. "Once a plaintiff makes this *prima facie* showing, the burden shifts to the employer to show by clear and convincing evidence, that it would have taken the same unfavorable personnel action in the absence of that [protected] behavior." *Young*, 42 F. Supp. 3d at 393. (citation, internal quotation marks, and alterations omitted).

Amtrak moves for summary judgment on the ground that Plaintiffs' demotions had "nothing to do with them reporting hazardous safety conditions." (Dkt. No. 22 at 1.) They argue

3

that Plaintiffs cannot establish a *prima facie* case under the FRSA whistleblower provisions, and that even if they could, the "clear and convincing evidence shows that Amtrak did not take adverse employment action" against them based on protected activity. (*Id*.) Amtrak does not appear to dispute that reporting safety violations is protected activity; that it knew Dendy and Polk were lead car inspectors whose role was to document and report safety defects; or that demotion is an adverse employment action. (*See* Dkt. No. 22 at 14-15.) Instead, Amtrak argues that Dendy and Polk were "underperforming employees," and that no reasonable version of the facts supports Plaintiffs' claims that they were demoted for engaging in protected activity. (*Id.* at 1, 22.)

Dendy and Polk contend that they were reporting legitimate safety violations, which is protected activity under 49 U.S.C. § 20109(b). (Dkt. No. 32 at 3-4.) To support this contention, they offer deposition testimony describing the safety violations they encountered, as well as testimony from Plaintiffs' supervisor, who stated that he never found Plaintiffs' reports to be illegitimate. (Dkt. No. 28-13 at 31 ("Q: Did you ever find that any of the items they were writing up were not legitimate, meaning they were false?  A: No.").)  They contend that whether Amtrak demoted them for their refusal to underreport safety violations is a disputed question of fact, which hinges on "a pure credibility determination." (Dkt. No. 32 at 5.)

Plaintiffs' argument prevails.  The core question in this case is why Amtrak demoted Dendy and Polk.  That is a question of material fact, over which there is a genuine dispute.  In light of Plaintiffs' sworn assertions that they were disqualified because they refused to downplay legitimate safety violations, and given the Court's obligation to construe all inferences in favor of Dendy and Polk, the Court cannot conclude that Amtrak is entitled to judgment as a matter of law. *Ricci*, 557 U.S. at 586.

**IV.     Conclusion**

For the foregoing reasons, Amtrak's motion for summary judgment is DENIED.  The parties are directed to confer regarding trial dates and to submit a joint letter by June 17, 2016, estimating the length of trial and proposing trial dates in in the next four months.

The Clerk of Court is directed to close the motion at docket number 20.


SO ORDERED.


Dated:  June 8, 2016
          New York, New York

_____
J. PAUL OETKEN
United States District Judge