UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TIMOTHY DENDY and JASON POLK,                :
                                             :
                              Plaintiffs,    :
                                             :         14-CV-8381 (JPO)
              -v-                            :
                                             :         OPINION AND ORDER
NATIONAL RAILROAD PASSENGER                  :
CORP.,                                       :
                                             :
                              Defendant.     :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

Plaintiffs Timothy Dendy and Jason Polk brought this action against Defendant National Railroad Passenger Corporation ("Amtrak") for violations of the whistleblower provisions of the Federal Railroad Safety Act ("FRSA"). *See* 49 U.S.C. § 20109. A jury trial was held in this case, beginning on September 12, 2016, and concluding on September 15, 2016, with a verdict for Plaintiffs, including an award of compensatory and punitive damages. Amtrak moved for judgment as a matter of law as to the punitive damages award. (*See* Dkt. No. 64.) For the reasons discussed below, the motion is denied.

**I.     Background**

Familiarity with the facts and history of this case is presumed.

As relevant to the pending motion, following a jury trial in this matter and a verdict for Plaintiffs, the jury awarded Plaintiff Jason Polk $150,711.43, including $711.43 in compensatory backpay, $25,000 in compensatory damages due to mental anguish or emotional suffering, and $125,000 in punitive damages. (Dkt. No. 53 at 2.) The jury awarded Plaintiff Timothy Dendy $125,711.43, including $711.43 in compensatory backpay and $125,000 in punitive damages. (*Id*. at 3-4.)

## II. Legal Standard

Federal Rule of Civil Procedure 50(b) provides that a party, having made an unsuccessful motion for judgment as a matter of law before the case is submitted to a jury (as Amtrak did here (*see* Trial Tr. 354:12-15)), "may file a renewed motion for judgment as a matter of law" after entry of the judgment. Fed. R. Civ. P. 50(b). "The post[-]trial motion is limited to those grounds that were specifically raised in the prior motion for [judgment as a matter of law]." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (internal quotation marks omitted) (quoting *McCardle v. Haddad,* 131 F.3d 43, 51 (2d Cir. 1997)). In order to prevail on a Rule 50 motion, the movant must show "that there is no legally sufficient evidentiary basis for a reasonable jury to find for the opposing party on an issue essential to a claim or defense." *Id.* (citing Fed. R. Civ. P. 50(a)(1)).

In deciding a Rule 50 motion, "the trial court is required to [']consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.[']" *Id.* (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir. 1988)). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Id.* (quoting *Smith*, 861 F.2d at 367).

## III. Discussion

Amtrak argues that, as a matter of law, the punitive damages awards must be set aside entirely due to lack of evidence adduced at trial to establish Amtrak's recklessness or callous indifference to Plaintiffs' rights under the FRSA's whistleblower protections. (Dkt. No. 66 at 9-12.) Rather, Amtrak contends, the punitive damages award could be explained only by the jury's

2

desire to "punish" Amtrak for safety issues entirely unrelated to Plaintiffs or the case at bar. (*Id.* at 13.)

Amtrak's arguments are unavailing. There was sufficient evidence adduced at trial to support the jury's finding of Amtrak's recklessness or callous indifference to Plaintiffs' whistleblower protections. Testimony at trial revealed that, as carman leads, Plaintiffs were responsible for carrying out safety inspections and recording any hazards. (*E.g.*, Trial Tr. at 77:24-45.) Amtrak did not specify how many trains a carman lead should inspect in a given shift or estimate how long he should spend inspecting each car. (*E.g.*, *id.* at 176:9-16; *id.* at 467:4-7.) Amtrak's Assistant Superintendent Felix Hull, who was involved in removing Plaintiffs from the carman lead program, testified that he understood that at least some of the defects written up by Plaintiffs in connection with their jobs were governed by federal regulation, including 49 C.F.R. § 238 ("Part 238"). (*E.g.*, *id.* at 474:1-13.) Despite Plaintiffs' responsibilities and the federal regulations governing those duties, Amtrak authorities, including Hull, told Plaintiffs to speed up their inspections and record fewer safety issues, and they further warned that Plaintiffs could face demotion if they failed to do so. (*E.g.*, *id.* at 76:21-25; *id.* at 125:23-25; *id.* at 187:13-18.) When Plaintiffs did not stop writing up safety violations they encountered, they were demoted from the carman lead program. (*E.g.*, *id.* at 230:17-231:1.)

This evidence provides an adequate basis, drawing all inferences in favor of the non-moving party and heeding the Court's responsibility not to second-guess the findings of the jury, to support the jury's conclusion that Amtrak acted with recklessness or callous indifference to Plaintiffs' protections under the whistleblower provision of the FRSA. In particular, a jury could reasonably conclude (and did, according to the verdict form) that Amtrak demoted and punished Plaintiffs in active disregard of the fact that Plaintiffs' writing up safety violations is protected by

3

the FRSA. (Trial Tr. at 504:10-17.) Such a finding does not require direct evidence, contrary to the implication of Amtrak's argument, that Amtrak knew that it was, in fact, violating Plaintiffs' rights under the FRSA—rather, it "pertain[s] to the [defendant's] knowledge that it may be acting in violation of federal law." *Tolbert*, 242 F.3d at 77 (second alteration in original) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). To that end, Mr. Hull's testimony of his awareness of the overlap between federal railroad safety regulations and Plaintiffs' reported safety violations, coupled with his command to Plaintiffs to record fewer such issues, could provide the basis for the jury's finding that punitive damages should be awarded.

Amtrak's version of events, as presented at trial, painted Plaintiffs' demotions as a direct result of their dawdling and delaying car inspections. But the jury—as indicated by the verdict—did not buy it. Plaintiffs, for their part, put on sufficient evidence to support a factual finding warranting punitive damages.

Ultimately, "[a]n award of punitive damages is 'a discretionary moral judgment' that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Id.* (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)). The Court will not second-guess the jury's judgment.

**IV.     Conclusion**

For the foregoing reasons, Amtrak's motion for judgment as a matter of law is DENIED.

The parties shall confer regarding any requested attorney's fees, costs, and expenses. If they are unable to reach an agreement, Plaintiffs' motion for attorney's fees, costs, and expenses shall be filed on or before June 1, 2017. Amtrak's response shall be filed on or before June 23, 2017.

The Clerk of Court is directed to close the motion at Docket Number 64.


SO ORDERED.


Dated: April 27, 2017
       New York, New York

_____
J. PAUL OETKEN
United States District Judge